## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

|  |  |  |
|---|---|---|
| STEVEN A. TALKIN, | ) |  |
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) | **CIVIL ACTION** |
| v. | ) |  |
|  | ) | **No. 05-2305-CM** |
|  | ) |  |
| DELUXE CORPORATION, et al., | ) |  |
|  | ) |  |
| Defendants. | ) |  |
| —————————————————— | ) |  |

## MEMORANDUM AND ORDER

Plaintiff Steve A. Talkin brings this action pursuant to the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 et seq., and the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 et seq. He asserts the following six claims against the following defendants:[1] (1) entitlement/interference under the FMLA against Deluxe[2]; (2) retaliation/discrimination under the FMLA against Deluxe; (3) retaliation for exercising ERISA rights against Deluxe; (4) failure to provide ERISA benefits pursuant to the Plan against Deluxe, the Plan, and Hartford-CEBSCO; (5) breach of ERISA fiduciary duty against all defendants; and (6) failure to provide information required by ERISA against Deluxe and Hartford-CEBSCO.

This matter is currently before the court on Defendant Hartford-CEBSCO's Motion for

---

[1] Defendants Deluxe Corporation ("DLX"), Deluxe Financial Services, Inc. ("DFS"), the Deluxe Short-Term Disability Plan ("Plan"), Hope Newland ("Newland"), and Kathy King ("King"), collectively referred to as the "Deluxe defendants," and The Hartford Comprehensive Employee Benefit Service Company ("Hartford-CEBSCO").

[2] For purposes of summary judgment, DFS and DLX are referred to individually and collectively as "Deluxe." The Deluxe defendants have made certain that the legal and factual distinctions between DFS and DLX are not material to summary judgment. The distinction is also immaterial to Hartford-CEBSCO's motion for summary judgment.

Summary Judgment (Doc. 191); the Deluxe Defendants' Motion for Summary Judgment (Doc. 192);

and Plaintiff's Motion for and Memorandum in Support of Partial Summary Judgment (Doc. 196).

## I.      Factual Background[3]

Defendant Deluxe manufactures checks.  Plaintiff was employed at Deluxe's Kansas City

Distribution Center from September 1978 until October 6, 2004.  At the time of his termination, he

worked as a web press operator, which required him to operate high-speed printing equipment.  In

May 2004, plaintiff was involved in a non-work-related automobile accident.  Although he returned

to work the day after the accident, he later began to experience complications from the accident.  He

continued to report to work, but on June 3, 2004, he missed a half-day of work due to a headache; he

had a doctor's note excusing the absence.  And on June 10, 2004, he stopped reporting to work.

### A.      Plaintiff's FMLA Leave

Deluxe approved plaintiff for FMLA leave beginning around June 10, 2004[4].  On July 13,

2004, plaintiff requested and was granted FMLA leave because his father was hospitalized with

leukemia.  On August 19, 2004, plaintiff attempted to return to work, but he was taking medication

that prevented him from working around high-speed equipment.  Because he could not be around

high-speed equipment, Deluxe would not let him work.  By September 3, 2004, plaintiff had used

twelve weeks of FMLA leave during the previous twelve months.  On or about September 30, 2004,

the manager of the Kansas City Distribution Center sent plaintiff a letter instructing him to return to

---

[3]  The court construes the facts in the light most favorable to the non-moving parties pursuant to Fed. R. Civ. P. 56.

[4]  The parties dispute whether plaintiff's FMLA leave began on June 10th or June 14th of 2004.  The exact start date of plaintiff's leave is immaterial for summary judgment purposes.  In any event, the parties agree that plaintiff had used twelve weeks of FMLA leave by September 3, 2004.

work by October 5, 2004.  Plaintiff did not return to work on October 5, 2004, and Deluxe terminated

him on October 6, 2004.  According to plaintiff, he did not return to work in October because his

headaches prevented him from performing his job as a web press operator.  Plaintiff was not ready,

willing, or able to return to work until November 1, 2004.

> ### B.      The Plan

After his accident, plaintiff applied for short-term disability benefits under the Deluxe

Short-Term Disability Plan ("the Plan").  If plaintiff qualified for benefits under the Plan, he was

entitled to almost 100% of his weekly earnings for up to twenty-five weeks.  To qualify for benefits,

an employee must be disabled as defined by the Plan.  The Plan defines "Disability" as "Total

Disability" and "Disabled" as "Totally Disabled," either of which means the employee is prevented

from performing the essential duties of his or her occupation, and as a result, is earning less than 20%

of his or her pre-disability weekly earnings because of health concerns, such as accidental bodily

injury.  Plan benefits cease on the date the employee "is no longer Disabled" or the date the employee

fails "to furnish proof that [he or she continues] to be Disabled."  Under the Plan, the Claims

Administrator may require that written proof of Total Disability be provided within thirty days of the

filing of the claim.  If the employee remains disabled, the Claims Administrator may require

additional written proof.

The Plan defines Deluxe Corporation as the Employer and provides that "[t]he named

Fiduciary and Plan Administrator is the Employer, which has full authority to manage the operation

and administration of the Plan."  (Def. Hartford-CEBSCO's Memo Ex. 1, Hartford-CEBSCO 0017.)

It also states that Hartford-CEBSCO is the Claims Administrator and provides that "The Plan

Administrator shall have the authority to amend the Plan, to determine its policies, and to appoint and

remove the Claims Administrator . . . ."  (*Id.*)  Under the Plan, "[t]he Employer has full discretion and

authority to determine eligibility for benefits and to construe and interpret all terms and provisions of the Plan" and is responsible for deciding appeals and making final determinations regarding eligibility. (*Id*. at 0011 and 0013.) Defendant Hope and defendant King are employed by Deluxe and involved in short-term-benefits appeals.

### C.    *Plaintiff's Short-Term Disability Claim*

On June 29, 2004, plaintiff contacted Hartford-CEBSCO, the claims evaluator, to initiate his benefits claim. He reported that he had a spinal injury resulting from the May 2004 motor vehicle accident. On June 30, 2004, Hartford-CEBSCO sent plaintiff a letter outlining the information needed to evaluate his claim. The letter (1) explained that plaintiff needed to have his treating physician call Hartford-CEBSCO with information regarding plaintiff's functional capabilities and limitations and (2) set out specific information that the doctor needed to submit to Hartford-CEBSCO. On July 13, 2004, Hartford-CEBSCO received telephone calls from plaintiff's chiropractor and primary care physician providing information regarding plaintiff's injury. On July 14, 2004, Hartford-CEBSCO sent plaintiff a letter notifying him that his claim for benefits was approved for June 10 through July 25 and that if he wanted benefits beyond July 25, he would have to have his physician complete and return a physician statement. The letter also said that if Hartford-CEBSCO did not received the information by August 4, 2004, it would assume he was not pursuing additional benefits and would close his claim.

On August 10, 2004, plaintiff contacted Hartford-CEBSCO about his benefits. Hartford-CEBSCO told him that it needed updated medical information. Dr. Philip Martin, plaintiff's primary care doctor, executed an Attending Physician's Statement of Continued Disability dated August 17, 2004. Dr. Martin restricted plaintiff from working around high-speed equipment due to his headaches, but indicated that plaintiff could return to work without restrictions on August 19,

2004. (Hartford-CEBSCO Mot. Ex. 5, Hartford-CEBSCO 0083.)  Plaintiff did not return to work on August 19, 2004.  On August 23, 2004, Hartford-CEBSCO sent plaintiff a letter notifying him that his claim for benefits was extended until August 18, 2004.  The letter also advised plaintiff that if he wanted benefits beyond August 18, he would have to have his physician complete and return another physician statement.  On September 1, 2004, plaintiff faxed Hartford-CEBSCO a note from Dr. Martin indicating that plaintiff was being treated for his illness and would not return to work until re-evaluated by his neurologist.  On September 19, 2004, Dr. Martin executed a second Attending Physician's Statement of Continued Disability, which again restricted plaintiff from working around high-speed equipment due to his headaches.  In his second statement, Dr. Martin indicated that plaintiff would be able to return to work without restrictions on November 1, 2004.  (Pl.'s Resp. Ex. 15, DLX/ST 0012.)

On September 21, 2004, Hartford-CEBSCO referred the claim to a Medical Clinical Case Manager for assessment.  On September 28, 2004, Hartford-CEBSCO sent plaintiff a letter explaining that his claim for benefits beyond August 18, 2004 was denied because he no longer met the Plan definition of Total Disability.  While evaluating plaintiff's claim, Hartford-CEBSCO did not fax specific medical questions to Dr. Martin regarding plaintiff's medical condition; did not correct an inadequate medical release so that Dr. Martin could release plaintiff's medical records, and did not tell plaintiff what information he needed to submit on appeal.

Plaintiff appealed the decision on December 20, 2004 arguing that (1) the decision was based on incomplete or inaccurate medical records and (2) plaintiff was not released to work without restrictions because it was unsafe for him to operate high-speed equipment while taking the medicine he was prescribed for his headaches.  On February 3, 2005, Hartford-CEBSCO forwarded the appeal to Deluxe for determination.  Deluxe denied plaintiff's appeal.

## II.    Summary Judgment Standards

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party.  *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

## III.    Discussion

### A.    *FMLA Claims*

The FMLA provides eligible employees up to twelve weeks of leave during any twelve-month period for various reasons, including suffering from a serious health condition or caring for an immediate family member who suffers from a serious health condition.  29 U.S.C. § 2612(a)(1)(A)-(D).  In addition to the leave, an employee is also entitled, upon return from the leave, to be restored to the same or an equivalent position as he held when his FMLA leave began.  29 U.S.C. § 2614(a)(1)(A)–(B).  The FMLA also contains substantive protections for employees who request FMLA leave or otherwise assert a right under the FMLA.  Specifically, § 2615(a)(1) prohibits employers from interfering with, restraining, or denying an employee's exercise or attempted exercise of his or her FMLA rights, and § 2615(a)(2) prohibits employers from discharging or discriminating against an employee who opposes any practice made unlawful by the FMLA.  *Id.* § 2615(a)(1), (2). The Tenth Circuit recognizes both causes of action as the entitlement/interference theory and the retaliation/discrimination theory.  *Smith v. Diffee Ford-Lincoln-Mercury, Inc.*, 298 F.3d 955, 960 (10th Cir. 2002).  Plaintiff brings FMLA claims against Deluxe under both theories.

### 1.    Entitlement/Interference

To establish a prima facie case under an interference theory, plaintiff must show: "(1) that he was entitled to FMLA leave; (2) that some adverse action by the employer interfered with his right to take FMLA leave; and (3) that the employer's action was related to the exercise or attempted exercise of his FMLA rights." *Jones v. Denver Pub. Schs.*, 427 F.3d 1315, 1319 (10th Cir. 2005). The employer's intent is immaterial. *Smith,* 298 F.3d at 960 (citations omitted). But an employee who requests leave has no greater rights than another employee who does not, *Gunnell v. Utah Valley State Coll.*, 152 F.3d 1253, 1262 (10th Cir. 1998) (citing 29 C.F.R. § 825.216(a)), so the employee must also demonstrate a causal connection between the two, *Dry v. Boeing Co.*, 92 Fed. App'x 675, 678 (10th Cir. 2004) (citing *Smith*, 298 F.3d at 961). The FMLA does not define "interference," but Department of Labor regulations provide that "'[i]nterfering with' the exercise of an employee's rights would include, for example, not only refusing to authorize FMLA leave, but discouraging an employee from using such leave." 29 C.F.R. § 825.220(b).

There is no dispute that plaintiff was entitled to, and received, twelve weeks of FMLA leave during the time in question. But plaintiff contends that he was entitled to return to the position that he held when his leave began—web press operator—or an equivalent position when he came back from his leave in November 2004. By September 3, 2004, plaintiff had used twelve weeks of FMLA leave for the preceding twelve month period. Plaintiff did not return to work when his FMLA leave expired in September; instead, he took additional time off until November.[5] Plaintiff attempted to return to work in August 2004, but he could not work due to his medication. At the end of

---

[5]  The parties dispute whether the time off between September 3, 2004 and November 1, 2004 was approved unpaid leave, but that determination is immaterial to plaintiff's entitlement/interference claim for purposes of summary judgment because even if it was approved leave, it was not FMLA leave.

September, after plaintiff's FMLA leave had expired, defendant Deluxe sent plaintiff a letter instructing him to return to work by October 5, 2004; plaintiff did not return to work on October 5, 2004. In fact, plaintiff was not willing to return to work until November 1, 2004.

As this court held in *Mondaine v. Am. Drug Stores, Inc.*, 408 F. Supp. 2d 1169, 1205–06 (D. Kan. 2006), an employee is only protected under the FMLA if he "reports for work with the required certification when [his] FMLA concludes." *Id.* (citing "29 C.F.R. § 825.311(c) (if employee fails to provide employer certification of ability to resume work or new medical certification for serious health condition when FMLA leave concludes, employee may be terminated); and *Sarno v. Douglas Elliman-Gibbons & Ives, Inc.*, 183 F.3d 155, 161–62 (2d Cir. 1999) (plaintiff's right to reinstatement could not have been impeded or affected by lack of notice because plaintiff's inability to work continued some two months after leave period ended); *Hanson v. Sports Auth.*, 256 F. Supp. 2d 927, 936 (W.D. Wis. 2003); *Farina v. Compuware Corp.*, 256 F. Supp. 2d 1033, 1054 (D. Ariz. 2003) (plaintiff who took longer than 12-week leave not entitled to equivalent position unless she was prepared to return to work during time designated as FMLA leave); *Summers v. Middleton & Reutlinger*, 214 F. Supp. 2d 751, 757–58 (W.D. Ky. 2002) (since plaintiff not able to return to work at end of 12 weeks, no prejudice from retroactive designation of FMLA leave)"). Plaintiff did not report for work with the required certification when his FMLA leave concluded. When he returned in November, plaintiff was not returning from FMLA leave and thus cannot state an entitlement claim under the FMLA. *See, e.g., Schnoor v. Publ'ns Int'l, LTD.*, No. 03C4972, 2005 WL 1651045, at *6 (N.D. Ill. July 7, 2005) (finding that employee was no longer protected by the FMLA after the initial twelve-week period expired).

Plaintiff also argues that he should have been given his previous position because he tried to return to work in August. But when he attempted to return in August, he could not perform around

-8-

high-speed equipment and was not able to preform as a web press operator.  Under the FMLA, an

employee is not entitled to his previous job, or an equivalent job, if he is unable to perform the job.

*See* 29 C.F.R. § 825.214(b) ("If the employee is unable to perform an essential function of the

position because of a physical or mental condition, including the continuation of a serious health

condition, the employee has no right to restoration to another position under the FMLA.").  The court

therefore finds that plaintiff is not entitled to relief under the FMLA and grants defendant's motion

for summary judgment on plaintiff's entitlement/interference claim.

### 2. Retaliation and Discrimination

To prove a prima facie case of FMLA retaliation, a plaintiff must show (1) that he engaged in

activity protected under FMLA; (2) defendant took an action that a reasonable employee would have

found materially adverse; and (3) a causal connection between such activity and the employer's

action.  *See Metzler v. Fed. Home Loan Bank of Topeka*, 464 F.3d 1164, 1171 (10th Cir. 2006).[6]

When analyzing FMLA retaliation claims, the court applies the traditional burden-shifting

framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–03 (1973).  *Richmond*

*v. ONEOK, Inc.*, 120 F.3d 205, 208 (10th Cir. 1997) (citation omitted).  Under this framework, a

defendant may rebut a prima facie case of retaliation by offering legitimate non-retaliatory reasons

for the adverse action.  *Id.* (citation omitted).  Once defendant offers such reasons, plaintiff must

present evidence that defendant's reasons are unworthy of belief.  *See Gunnell v. Utah Valley State*

*Coll.*, 152 F.3d 1253, 1263 (10th Cir. 1998) (explaining that a plaintiff asserting a retaliation claim has

the ultimate burden to demonstrate that the challenged employment decision was the result of

---

[6]  The Tenth Circuit previously held that a prima facie case of retaliation under the FMLA
required an "adverse employment action."  In *Metzler*, the court recognized the Supreme Court's
formulation of the second prong of the prima facie case of retaliation in Title VII cases and applied it
to FMLA retaliation cases, which now only requires "that a reasonable employee would have found
the challenged action materially adverse."  464 F.3d at 1171 n.2.

intentional retaliation).  The plaintiff's burden "is only to demonstrate a genuine dispute of material fact as to whether the proffered reasons were unworthy of belief."  *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1321 (10th Cir. 1997) (citation omitted).

    For purposes of summary judgment, defendant Deluxe does not contest whether plaintiff can establish a prima facie case of retaliation.  Instead, Deluxe argues that plaintiff was discharged for a legitimate, non-retaliatory reason—for refusing to return to work more than a month after his FMLA leave expired.  The court finds that Deluxe has articulated a legitimate, non-retaliatory reason for terminating plaintiff's employment.  *See, e.g., Trujillo-Cummings v. Pub. Serv. Co. of N. M.*, No. 97-2337, 1999 WL 169336, at *4 (10th Cir. Mar. 29, 1999) (finding that plaintiff's failure to show up for work for over a month is a facially legitimate justification for termination).

    The court next considers whether a genuine issue of material fact exists regarding defendant's proffered reason for plaintiff's termination.  Plaintiff may establish pretext by demonstrating "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence."  *Twilley v. Integris Baptist Med. Ctr., Inc.*, 16 Fed. App'x 923, 925 (10th Cir. 2001) (*citing Morgan*, 108 F.3d at 1323).  This is typically done by (1) showing the defendant's legitimate reason is false, (2) showing that "the defendant acted contrary to a written company policy prescribing the action to be taken by the defendant under the circumstances . . . ; or (3) [showing] that the defendant acted contrary to an unwritten policy or contrary to company practice when making the adverse employment decision affecting the plaintiff."  *Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1230 (10th Cir. 2000) (citations omitted).

    To establish pretext, plaintiff relies on the temporal proximity of his FMLA leave to his termination and a plethora of allegations against Deluxe.  Those allegations include the following: (1)

Deluxe employees originally informed him that his FMLA leave ended the week of August 28, 2004, when it actually ended on or about September 3, 2004; (2) plaintiff was entitled to and Deluxe put him on unpaid leave for up to six months, but Deluxe fired him thirty-two days into the leave; (3) while plaintiff was on FMLA leave, Deluxe plotted to terminate his employment before he had refused to return; (4)  Deluxe violated its return-to-work policy because it did not assign plaintiff a restricted, light, modified, or transitional job that was not around high-speed equipment; (5) Deluxe management decided it needed to keep a "close eye" on plaintiff; (6) Deluxe was attempting to reduce the number of press operators because business was slow; (7) Deluxe claimed he "voluntarily abandoned" his job even though he wrote Deluxe saying he thought termination would be premature; (8) Deluxe corporate was more involved in his termination than it usually is with termination decisions; (9) Deluxe considered plaintiff able to return to work with no restrictions, but would not let plaintiff work because he could not be around high-speed equipment while on his medication; (10) plaintiff was not provided with his full short-term disability leave; (11) Deluxe wanted him to sign what might be construed as a waiver of short-term disability benefits; (12) Deluxe told him he could be subject to termination if his written request for an unpaid leave of absence was denied for business needs even though there were no business needs at the time; (13) Deluxe has a pattern and practice of retaliating against employees who take FMLA leave; and (14) Deluxe prepared plaintiff's termination notice three days before he was terminated.

Temporal proximity alone is insufficient to raise a genuine issue regarding pretext.  *Hysten v. Burlington N. Santa Fe Ry. Co.*, 372 F. Supp. 2d 1246, 1254–55 (D. Kan. 2005) (citing *Annett v. Univ. of Kan.*, 371 F.3d 1233 (10th Cir. 2004); *Pastran v. K-Mart Corp.*, 210 F.3d 1201 (10th Cir. 2000); *Vigil v. Colo. Dep't of Higher Educ.*, 185 F.3d 876, 1999 WL 407479 (10th Cir. 1999)).  But a plaintiff can survive summary judgment when temporal proximity is coupled with additional facts

that support pretext.  *Metzler,* 464 F.3d at 1172 (holding the plaintiff must "present evidence of temporal proximity *plus* circumstantial evidence of retaliatory motive" to establish pretext).

Many of plaintiff's allegations of pretext are immaterial or untrue—the "pattern and practice of retaliation against employees who take FMLA leave" is predicated upon one case[7], a case in which Judge Vratil found Deluxe was *not* retaliating against the employee; the email regarding keeping a "close eye" on plaintiff was written in June 2003, more than a year before plaintiff's leave at issue in this case; and the record does not support plaintiff's allegation that defendant prepared plaintiff's termination notice on October 3, 2004.  But there is a genuine dispute as to whether plaintiff was on an unpaid leave of absence after his FMLA leave expired.  If plaintiff was on approved unpaid leave pursuant to Deluxe's policies, he may have been entitled to additional time off, and Deluxe may have violated its own policy or practice by terminating plaintiff on October 6, 2004.  The human resources representative stated in her deposition that if plaintiff had been on an approved leave of absence, he would not have been terminated.  (Pl's Resp. Ex. 3, Biggs' Depo. at 152.)  The temporal proximity of plaintiff's FMLA leave to his termination combined with plaintiff's allegations of pretext—those with merit—create a genuine issue for the jury to decide.  The court, therefore, finds that plaintiff has met its burden to show that there is a genuine dispute of material fact as to whether the proffered reason is unworthy of belief.  Defendant's motion for summary judgment on plaintiff's FMLA retaliation claim is denied.

### B.    *ERISA Claims*

#### 1.    **Retaliation**

---

[7] *Williamson v. Deluxe Fin. Servs., Inc.*, No. 03-2538-KHV, 2005 WL 1593603 (D. Kan. Jul. 6, 2005) (granting summary judgment in favor of Deluxe and dismissing Mr. Williamson's retaliation claim).

29 U.S.C. § 1140, ERISA § 510, provides that "[i]t shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under [ERISA]."  29 U.S.C. § 1140.  To prevail under § 510, "an employee must demonstrate that the defendant had the specific intent to interfere with his ERISA rights."  *Cunningham v. Adams*, 106 Fed. App'x 693, 698 (10th Cir. 2004) (citation omitted).  This burden can be satisfied by either direct or circumstantial proof of the defendant's intent.  *Winkel v. Kennecott Holdings Corp.*, 3 Fed. App'x 697, 706 (10th Cir. 2001) (citing *Garratt v. Walker*, 164 F.3d 1249, 1256 (10th Cir. 1998) (en banc)).  If a plaintiff chooses to produce circumstantial evidence, the court employs the *McDonnell Douglas* burden-shifting analysis.  *Id.*  Here, plaintiff purports to present both direct and circumstantial evidence.

The sole support for plaintiff's claim of direct evidence is that a Deluxe manager "made a comment about 'several STD claims [plaintiff] has had over the years.'"  When read in context, it is clear that the manager was trying to explain to plaintiff what steps plaintiff needed to take with respect to his short term disability benefits:

> We said that we were only trying to be empathetic to your situation at the same time of trying to work with him on the STD claim. Susan said that the doctor was not being responsive to Hartford's request which she then explained the list of documents again to Steve.
> Steve then started saying again that he called Hartford on Friday and talked with them and that the camel is off his back on this one.  He felt he didn't need to do anything more with this.  He said that it was Deluxe's responsibility to get the information.  At which point, I told him that this was not any different than the last several STD claims he has had over the years.  It was his responsibility to make sure the insurance company had the necessary information to process the STD claim.

(Pl's Resp. Ex. 12, DLX/ST 00002.)  Plaintiff has not provided any additional facts or legal authority to support his claim that this comment is direct evidence of a retaliatory motive.  Based on the record, the court finds that the "several STD claims" comment is not direct evidence of retaliation.

-13-

Because plaintiff also presents circumstantial evidence, the court will evaluate plaintiff's claim under the *McDonnell Douglas* burden-shifting analysis, as set forth above. Defendant does not dispute whether plaintiff has established a prima facie case of retaliation, but sets forth a legitimate non-discriminatory reason for plaintiff's termination—plaintiff's refusal to return to work after his STD benefits expired. Thus, the court must determine whether plaintiff has demonstrated that Deluxe's proffered reason is unworthy of belief.

Plaintiff relies on the same circumstantial evidence of pretext as he did for his FMLA retaliation claim. As the court explained above, many of plaintiff's allegations of pretext appear disingenuous and immaterial, but there remains a dispute about whether plaintiff was on approved leave of absence when he was terminated and whether that entitled him to additional leave under Deluxe's policies or practices. Therefore, the court finds that there is a genuine issue of material fact regarding pretext. Defendant's motion for summary judgment on plaintiff's ERISA retaliation claim is denied.

## 2.   Denial of Benefits

### a.   *Proper Party*

Plaintiff brings his claim for benefits under 29 U.S.C. § 1132(a)(1)(B), ERISA § 502(a)(1)(B), against Deluxe, the Plan, and Hartford-CEBSCO. Plaintiff seeks relief for denial of his benefits against Hartford-CEBSCO, alleging agency and co-fiduciary liability. Hartford-CEBSCO argues that it is not a proper party to plaintiff's denial of benefits claim because it is not a fiduciary or the plan administrator. Under ERISA a party is a fiduciary "to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets . . . or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan." 29 U.S.C. §

-14-

1002(21)(A).          Hartford-CEBSCO does not fall under this definition of a fiduciary. Hartford-CEBSCO performed ministerial functions for the plan.[8] Hartford-CEBSCO is a third-party service provider; it does not have discretionary authority to manage or administer the Plan.  It merely provides initial claims evaluation and claims management.  And it performs these functions at the request of Deluxe.  Deluxe has the discretionary authority to maintain and administer the Plan.  As a third-party performing ministerial functions, Hartford-CEBSCO is not a fiduciary.  *See Trustees of the Color. Laborers' Health & Welfare Trust Fund v. Am. Benefit Plan Adm'rs, Inc.*, No. 04-cv-02630-EWN, 2006 WL 2632308, at *6 (D. Colo. Sept. 13, 2006) ("Thus, a person performing 'ministerial functions' is not a fiduciary.") (citing DOL Interpretive Bulletin 75–8, 29 C.F.R. § 2509.75–8 at D-2; *CSA 401(k) Plan v. Pension Prof'ls, Inc.*, 195 F.3d 1135, 1139 (9th Cir. 1999); *IT Corp. v. Gen. Am. Life Ins. Co.*, 107 F.3d 1415, 1420 (9th Cir. 1997); *Flacche v. Sun Life Assurance Co.*, 958 F.2d 730, 734–35 (6th Cir. 1992)).

        Under ERISA, plan administrator liability is limited to those entities designated as administrators pursuant to 29 U.S.C. § 1002(16)(A).  *Torre v. Federated Mut. Ins. Co.*, No. 91-4235-DES, 1993 WL 545237, at *2 (D. Kan. Dec. 3, 1993) (citing *McKinsey v. Sentry Ins.*, 986 F.2d 401 (10th Cir. 1993)).  ERISA defines "administrator" as:

> (i) the person specifically so designated by the terms of the instrument under which the plan is operated;

---

        [8] Plaintiff alleges that Hartford-CEBSCO's documents acknowledge that it assumed fiduciary responsibility, citing H176, 156, and 160.  But plaintiff fails to point the court to the location of the documents and after searching the record, the court cannot find the cited documents.  "The moving party bears the burden to demonstrate that there is no issue of material fact.  The plaintiff may not simply point to allegations made in [the] complaint but must identify and provide evidence of 'specific facts creating a triable controversy.' . . .  Simply providing a massive record does not satisfy this burden, and we will not sort through a voluminous record in an effort to find support for the plaintiff's allegations."  *Howard v. Columbia Pub. Sch. Dist.*, 363 F.3d 797, 800–01 (8th Cir. 2004) (quoting *Jaurequi v. Carter Mfg. Co.*, 173 F.3d 1076, 1085 (8th Cir. 1999)).

(ii) if an administrator is not so designated, the plan sponsor; or

(iii) in the case of a plan for which an administrator is not designated and a plan sponsor cannot be identified, such other person as the Secretary may by regulation prescribe.

29 U.S.C. § 1002(16)(A).  ERISA requires that the plan administration be vested in a fiduciary, but allows the plan administrator to hire an agent to carry out the plan responsibilities.  *Geddes v. United Staffing Alliance Employee Med. Plan*, 469 F.3d 919, 931 (10th Cir. 2006).  Despite this delegation, the plan fiduciary remains "legally responsible both for its own decisions and also for decisions made by its agent."  *Id.*

Here, the plan provides that Deluxe is the Plan Administrator.  And both Hartford-CEBSCO and Deluxe admit that Deluxe is the Plan Administrator.  When Hartford-CEBSCO made the initial decision to deny plaintiff's benefits, it was acting on behalf of the Plan Administrator, Deluxe.  Deluxe, as the Plan Administrator, is responsible for Hartford-CEBSCO's actions.[9]  *Geddes*, 469 F.3d at 927 ("[f]or purposes of liability, decisions made by third-parties are decisions made by the fiduciary.")  *Id.* at 927.  Thus, Deluxe, not Hartford, is the proper party for plaintiff's denial of benefits claim.

### b.    *Deluxe's Denial of Benefits*[10]

_____

[9]  The Tenth Circuit has refused to recognize liability under a de facto administrator theory. *Torre*, 1993 WL 545237, at *2.  Thus, any claim plaintiff attempts to bring under a de facto theory is denied.

[10]   As defendant Hartford-CEBSCO points out in its brief, some Kansas district courts apply a different summary judgment standard when evaluating a denial of ERISA benefits under an arbitrary and capricious review.  *Panther v. Synthes*, 380 F. Supp. 2d 1198, 1207 n.9 (D. Kan. 2005) (citing *Caldwell v. Life Ins. Co. of N. Am.*, 37 F. Supp. 2d 1254, 1257 (D. Kan. 1998), *rev'd on other grounds*, 287 F.3d 1276 (2002)).  This is because the court is typically confined to the administrative record when determining whether a denial of benefits was reasonable.  *See Caldwell*, 37 F. Supp. 2d at 1257 (citation omitted).  In this case, however, plaintiff argues that the decision to deny his

(continued...)

"[A] denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the plan administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). Where, as here, a plan gives the administrator or fiduciary discretion, the court applies an arbitrary and capricious standard. *Hollingshead v. Blue Cross & Blue Shield of Okla.*, No. 05-6276, 2007 WL 475832, at *2 (10th Cir. Feb. 15, 2007). Under the arbitrary and capricious standard, the decision will be upheld unless there is no reasonable basis for the decision. *Kimber v. Thiokol Corp.,*196 F.3d 1092, 1098 (1999) ("The decision will be upheld unless it is 'not grounded on any reasonable basis.'") (internal quotations omitted). But the standard of review is altered when the plan administrator has a conflict of interest. *Fought v. Unum Life Ins. Co. of Am.*, 379 F.3d 997, 1003 (10th Cir. 2004). The standard remains arbitrary and capricious, but the amount of deference decreases in proportion to the extent of conflict present. *Kimber,* 196 F.3d at 1097; *Hollingshead*, 2007 WL 475832, at *3 ("[A] reviewing court 'undertake[s] a "sliding scale" analysis, where the degree of deference accorded the Plan Administrator is inversely related to the "seriousness of the conflict."'" (quoting *Allison v. UNUM Life Ins. Co. of Am.*, 381 F.3d 1015, 1021 (10th Cir. 2004)).

Plaintiff asserts that Deluxe has an inherent conflict of interest because it is both plan administrator and payor of benefits under the Plan. *See Caldwell v. Life Ins. Co. of N. Am.*, 287 F.3d

---

10 (...continued)
benefits was arbitrary and capricious because he was denied a full and fair review—he was denied the opportunity to provide the requested medical information. Because there is a genuine dispute of fact regarding whether plaintiff was given a full and fair review and evidence regarding this issue may not be contained in the administrative record, the court cannot decide this issue as a matter of law at this stage of the proceedings. *See, e.g., Ford v. Metro. Life Ins. Co.,* 834 F. Supp. 1272, 1279 (D. Kan. 1993) (denying summary judgment when there was a dispute about whether defendant conducted a full and fair review).

1276, 1283 (10th Cir. 2002) (finding that an inherent conflicts exists when the defendant is both the administrator and the insurer of the plan). Deluxe does not contest that the less deferential standard applies to plaintiff's benefits claim. Because there is a conflict of interest, the burden shifts to Deluxe to "demonstrate that its interpretation of the terms of the plan is reasonable and that its application of those terms to the claimant is supported by substantial evidence." *Fought*, 379 F.3d at 1006. And the "court must take a hard look at the evidence and arguments presented to the plan administrator to ensure that the decision was a reasoned application of the terms of the plan to the particular case, untainted by the conflict of interest." *Id.*

Plaintiff argues that the decision to deny plaintiff's benefits was arbitrary and capricious for a variety of reasons, including because plaintiff was not given "full and fair review." Plaintiff alleges that he did not have an opportunity to provide the requested medical information—plaintiff claims that he was not informed (1) about the specific reasons for the denial; (2) of the type of information he needed to submit on appeal; (3) that the medical release for Dr. Martin's records was invalid; and (4) that defendant did not send Dr. Martin questions regarding plaintiff's condition. After reviewing the record, the court finds that there are genuine issues of material fact that must be resolved by the trier of fact.

The court recognizes that it will ultimately be the trier of fact, but at this stage of the proceedings the court cannot determine the facts; it must construe the facts in the light most favorable to the non-moving party. Fed. R. Civ. P. 56. When viewed in such a light, the facts do not warrant summary judgment on this claim.

## 3.  **Breach of Fiduciary Duty**

Plaintiff brings this claim against all of the defendants. As discussed above, defendant Hartford-CEBSCO is not a fiduciary, and thus, is not liable for the alleged breach of fiduciary duty.

Under his breach of fiduciary duty claim, plaintiff seeks benefits due, reinstatement of his benefits, and reinstatement of his job.  Equitable relief under 29 U.S.C. § 1132(a)(3), ERISA § 502(a)(3), is only available if no other adequate ERISA remedy is available.  *See Moore v. Berg Enters., Inc.,* 201 F.3d 448, 449 n.2 (10th Cir. 1999) (citing *Varity Corp. v. Howe*, 516 U.S. 489 (1996)).

### a.      Benefits Due

ERISA § 502(a)(1)(B) "provides that a participant or beneficiary may sue to recover benefits due, to enforce rights to future benefits or to clarify rights to future benefits."  *Hyde v. Benicorp. Ins. Co.*, 363 F. Supp. 2d 1304, 1308 (D. Kan. 2005).  Defendants argue that plaintiff's claim is barred because he has, and is pursuing, an adequate remedy under 502(a)(1)(B) for his benefits due claim. The court agrees.  Under § 502(a)(1)(B) the court may enter judgment in the amount of the benefits due with prejudgment interests; vacate the termination of benefits and order them reinstated; or clarify plaintiff's rights to future benefits.  *Id.* at 1308–09.  Moreover, the factual allegations plaintiff relies on for his breach of fiduciary duty claim are the same allegations he relies on to support his other ERISA claims.  Thus, plaintiff's § 502(a)(1)(B) claim provides an adequate remedy for his benefits due claim and he cannot seek additional relief under § 502(a)(3).

### b.      Reinstatement as Web Press Operator

On the other hand, plaintiff's request for reinstatement as web press operator is not a remedy available under § 502(a)(1)(B)—defendant has not provided any authority holding that job reinstatement is available under this section, and the court has found none.  Defendants argue that plaintiff cannot seek reinstatement under a breach of fiduciary duty claim, but they cite no authority for their position.  After extensive research, the court has been unable to find such authority.  *Cf. Griggs v. E.I. DuPont de Nemours & Co.*, 237 F.3d 371, 385 (4th Cir. 2001) (recognizing that reinstatement to former position may be appropriate relief under ERISA for a breach of fiduciary

duty claim).  Plaintiff does have another claim in which he seeks reinstatement—his § 510 retaliation claim; however, the remedial statute for his retaliation claim is the same as that for his breach of fiduciary duty claim.  *See Millsap v. McDonnell Douglas Corp.*, 368 F.3d 1246, 1247 (10th Cir. 2004) ("Section 502(a)(3) of ERISA provides the plan participant with his exclusive remedies for a § 510 violation.").  Nothing prevents plaintiff from bringing alternative claims under § 502(a)(3).  Plaintiff may seek to be reinstated to his previous job under § 502(a)(3) pursuant to § 404(a)(1) or § 510.

### 4.        Failure to Provide Required Information

Plaintiff brings this claim under 29 U.S.C. § 1132(a)(1)(A), ERISA § 502(a)(1)(A), alleging he was not provided information as required by 29 U.S.C. § 1132(c), ERISA § 502(c), against Deluxe and Hartford-CEBSCO.  Plaintiff alleges that Hartford-CEBSCO is liable as a co-plan administrator. As the court explained above, Deluxe is the Plan Administrator as defined by ERISA.  *McKinsey,* 986 F.2d at 404 ("Section 1002(16)(A) provides that if a plan specifically designates a plan administrator, then that individual or entity is the plan administrator for purposes of ERISA. "); *see also Averhart v. US WEST Mgmt. Pension Plan*, 46 F.3d 1480, 1489–90 (10th Cir. 1994) (holding that designation as plan administrator under 1002(16)(A) is conclusive for purposes of applying § 1132(c)[, ERISA § 502(c),] and cannot be expanded or modified to include another person, even if the other person acted as administrator, was the contact person, and was responsible for, or took responsibility for, the failed production of the requested information).  Only the plan administrator is liable for civil penalties under § 502(c).  *See McKinsey,* 986 F.2d at 404–05 (holding that even when a person other than the plan administrator is responsible for providing the information, "the statutory liability for failing to provide requested information remains with the designated plan administrator"); *see also Averhart*, 46 F.3d at 1489–90 (holding that only the plan administrator could be held liable for civil penalties under ERISA).  Thus, plaintiff's claim against Hartford-CEBSCO fails as a matter of law.  Plaintiff's

-20-

claim for failure to provide information as required by ERISA is only viable against Deluxe.  But that does not necessarily leave plaintiff without a remedy; the actions of Hartford-CEBSCO may be imputed to Deluxe.  *Averhart*, 46 F.3d at 1490 n.8 (citing *McKinsey*, 986 F.2d at 404) ("In many cases, 'the actions of the other employees may be imputed to the plan administrator' for purposes of assessing civil penalties under § 11329(c).").[11]

The current record is insufficient to determine as a matter of law whether Deluxe is liable for failing to provide the requested information.

### **5.     Legal Relief**

Defendants argue that they are entitled to summary judgment on plaintiff's claims for the following relief because it is legal relief, which is not available under ERISA:

(1)     back pay and lost benefits;

(2)     equitable restitution of all savings or gains realized by Deluxe;

(3)     punitive damages; and

(4)     such other monetary relief incidental to or intertwined with the injunctive relief of reinstatement and restoration.

Generally, compensatory damages are not recoverable under ERISA § 502(a)(3) "because they are based on plaintiff's loss rather than defendant's gain." *Michaelis v. Deluxe Fin. Servs., Inc.*, 446 F. Supp. 2d 1227, 1229 (D. Kan. 2006) (citing *Millsap*, 368 F.3d at 1254).  Back pay is typically considered a legal remedy, but is excepted from the general rule if it is "incidental to" a request for reinstatement.  *Id.* (citing *Millsap*, 386 F.3d at 1256–57).  Plaintiff argues that his request for $104,025.42 in lost wages and lost benefits is incidental to his reinstatement claim.  The court

---

[11]  Because Deluxe can be liable for the acts of its agents under federal law, the court need not address the issue of whether ERISA preempts Kansas agency law at this stage of the proceedings.

disagrees.  As the court pointed out in *Michaelis*, "'[i]ncidental' is ordinarily defined as 'being likely to ensue as a chance or minor consequence.'" 446 F. Supp. 2d 1227 at 1230 (quotations omitted). Plaintiff's back pay claim is not a minor consequence of his reinstatement claim, but a request for legal, monetary relief, which is not recoverable under ERISA § 502(a)(3).  The court finds that plaintiff cannot seek back pay and lost benefits.

The court next considers plaintiff's claim for "equitable restitution of all savings or gains realized by Deluxe."  Although plaintiff phrases this relief as "restitution," it is really a request for back pay and lost benefits—"[t]he Plan has not paid Plaintiff's STD nor other benefits or wages since August 18, 2004."  (Pl's Resp. at 53.)  And "all savings or gains realized by Deluxe" would be calculated by the value of the benefits allegedly owed to plaintiff—plaintiff's loss rather than defendant's gain.  As the court explained above, such relief is not recoverable under ERISA § 502(a)(3).

Plaintiff also seeks punitive damages, requesting the court to expand, modify, and reverse the existing law.  The court declines this opportunity.  Punitive damages are not recoverable under ERISA.  *Allison*, 381 F.3d at 1025 (recognizing that ERISA does not allow punitive damages); *Lewis v. UNUM Corp.*, No. CIV. A. 99-2501-CM, 2000 WL 1117522, at *2 (D. Kan. 2000) ("Punitive damages are not available in an ERISA action.").  The court finds that plaintiff cannot recover punitive damages under his ERISA claims.

The court cannot consider plaintiff's last request for relief because the court is unclear what remedies plaintiff seeks as "such other monetary relief incidental to or intertwined with the injunctive relief of reinstatement and restoration."  Because plaintiff's claims are unclear, the court cannot determine as a matter of law that such relief is inappropriate.  But plaintiff cannot recover for relief it did not seek.  The court will consider whether such relief is appropriate in the future if the relief is

-22-

identified and has been properly pleaded.

**6.     Jury Trial**

Defendants move the court to strike plaintiff's demand for a jury trial on his ERISA claims.

Under Tenth Circuit law, plaintiff has no right to a jury on his ERISA claims. *Adams v. Cyprus Amax*

*Minerals Co.*, 149 F.3d 1156, 1162 (10th Cir. 1998) (holding that no right to a jury attaches to ERISA

claims). Plaintiff does not dispute this legal proposition, but instead asks the court to adopt the

reasoning in *Babich v. Unisys Corp.*, No. 92-1473-MLB, 1994 WL 167984 (D. Kan. Apr. 08, 1994),

and allow his ERISA claims to be tried with his FMLA claim. In *Babuch*, the court allowed the

ERISA claims to be tried to a jury for the sake of judicial economy. But the court held that the jury's

determination on the ERISA claim would be discretionary and the ERISA liability and damages

determinations would be made by the court, not the jury. The court does not find that judicial

economy necessitates a joint trial on the issues. Plaintiff's ERISA claims will be tried to the court,

his remaining claims will be tried to a jury.

**IV.     Conclusion**

The court has considered all of the arguments presented by the parties, although they are not

all discussed here. Some of the arguments are irrelevant to the claims at issue in this case. Others

have been rendered moot by the court's decision.

**IT IS THEREFORE ORDERED** that Defendant Hartford-CEBSCO's Motion for Summary

Judgment (Doc. 191) is granted in part and denied in part.

**IT IS FURTHER ORDERED** that the Deluxe Defendants' Motion for Summary Judgment

(Doc. 192) is granted in part and denied in part.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for and Memorandum in Support of

Partial Summary Judgment (Doc. 196) is denied as moot.

-23-

Dated this 18th day of May, 2007, at Kansas City, Kansas.

s/ Carlos Murguia
**CARLOS MURGUIA**
**United States District Judge**